**WAXAHACHIE BANK & TRUST COMPANY, Appellant,**

**v.**

**W. J. PRICE et al., Appellees.**

**No. 6998.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 10, 1957.

Robert A. Gwinn, Malone, Lipscomb & Seay, Dallas, for appellant.

J. Alex Blakeley, Dallas, for appellees.

CHADICK, Chief Justice.

This is a venue case. The judgment of the trial court sustaining the plea of privilege of non-resident appellees is affirmed.

Appellant, Waxahachie Bank & Trust Company, brought suit in Dallas County

against Llano H. White, admittedly a resident of Dallas County, and W. J. Price, T. A. Lewis, N. H. Pierce, Jack Pullen, J. T. Lofland and R. M. James, residents of Rockwall County. White did not answer or enter an appearance; all of the Rockwall County residents filed pleas of privilege and appellant timely controverted the pleas and alleged and proved certain facts which it contended sustained venue in Dallas County under subdivision 4, Article 1995, Vernon's Ann.Tex.Civ.St.

The appellant excepted to the court's order transferring the case to Rockwall County as to the residents of that county, and presents three points of error for review in this Court.

■ Appellant's first point is:

"The error of the Court in sustaining defendants' pleas of privilege, since plaintiff alleged and proved both residence and a cause of action against the resident defendants, and at the same time plaintiff alleged a joint cause of action or cause of action against the non-resident defendants so intimately connected with the action against the resident defendant that the two may be joined under the rule intended to avoid a multiplicity of suits."

Neither of the other points bring into question the sufficiency of the evidence to sustain the judgment of the trial court. This first point seems to assume that a cause of action against the resident defendant was proven as a matter of law. The trial court having rendered a judgment adverse to the appellant and no findings of fact or conclusions of law having been requested or filed, this Court must indulge a presumption that the trial court found facts consistent with and that supported his judgment and unless it appears that the trial court's judgment is based upon something else, the presumption must be that the trial court did not find that the appellant had proved a cause of action against the resident defendant, White.

The statement of facts shows that a vice-president of the appellant Bank was the witness upon whom the appellant relied to make its case. (The only other witnesses were B. F. White and L. H. Jones, automobile dealers, whose names had been forged to certain certificates of title and each as witness denied the genuineness of signatures purporting to be theirs upon the instruments or any participation in securing the certificates.) A review of the vice president's testimony shows that it is not without equivocation or confusion, and contains some elements of contrariety upon which a court, as the trier of the facts, might disregard it. As an illustration, on cross-examination he testified as follows:

"Q. And the fact of the business is, the bank doesn't have any claim against White or anybody else on this transaction; you have got all of your money, haven't you? That is true, isn't it? A. The insurance company paid us.

"Q. Yes, and then I say you got all your money out of it, didn't you—the bank? A. The bank.

*    *    *    *    *    *

"Q. And as far as the Waxahachie Bank & Trust Company is concerned, you are just up here testifying because Mr. Gwinn has asked you to come up here and state these facts you have been testifying about? A. That is right.

"Q. And you have said in your testimony a time or two that—you made some reference to the fact you lost money on the notes and couldn't collect them. You did finally recoup your entire loss, didn't you? A. The insurance company paid us.

*    *    *    *    *    *

"Q. And when you were paid in full, do you know whether or not you assigned the notes to the insurance company? A. We gave them the notes.

"Q. You just gave them the notes? A. Yes, sir.

"Q. You didn't assign anything? A. I couldn't say about that."

On re-direct examination he further testified:

"Q. Mr. Myers, your notes provide for a loan of $1410.86 and $1675.85; those are on the two loans; is that correct? A. That is right.

"Q. Now then, in addition to that, does it provide for an interest rate? A. No; we put the interest in there at the time we make the loan.

"Q. Does it provide for an interest rate after the note matures, in the event it is not paid upon maturity? A. Yes, sir.

"Q. What interest rate is that? A. Well, let's read down here and see. 'With interest from maturity at the rate of ten percent per annum, payable monthly on the unpaid balance of the principal as it is accrued, and I or we or either of us and all endorsers hereon further agree and promise as follows.' Do you want me to read all of that?

"The Court: No, don't read it all.

"Q. Mr. Gwinn: Does it also provide for fifteen percent attorney's fee? A. Yes, sir.

"Q. Now, sir, when you made your claim for the insurance, do you remember what the insurance company paid you? A. No, sir.

"Mr. Blakeley: Now we are going to object to—are you fixing to offer your assignments?

"Mr. Gwinn: No, I am just going to show what the insurance company paid, what the exact amount of the note was and show that this bank does have an interest in it.

"Mr. Blakeley: I see. I am sorry.

"Q. Mr. Gwinn: Well, do you remember that when you settled your loss with the insurance company that it wasn't for the full amount, or was it for the full amount of these notes plus ten percent interest, plus attorney's fees? A. No, sir.

"Q. Mr. Gwinn: You testified under Mr. Blakeley's examination that you had settled your loss with the insurance company. Did the insurance company pay you the full amount of the loan, plus overdue interest, plus attorney's fees as provided? A. I can't say how much the check was for, no, I can't, because we rebated some interest on it and canceled the insurance, and I can't state.

"Q. By canceling the insurance, what do you mean by that, Mr. Myers? A. Well, if there is any rebate coming back on the insurance policy, why, it was taken off.

"Q. Now what insurance policy is that? A. Well, all automobile loans carry an insurance policy with it if it is over a hundred dollars.

"Q. And in the face amount of this loan, that insurance premium is included; is that correct? A. Yes, sir.

"Q. All right. And you did rebate a portion of that insurance premium? A. Sometimes a customer pays it and sometimes they don't if we could we would, and if we couldn't we didn't. And I don't know how he handled his insurance. I think I could check up here and find out. On the '54 the insurance was included in the note, and on the '53 it was included in the note.

"Q. Now then, I believe you say that you rebated a portion of the insurance in settling this claim with your insurance company; is that right? A. I am sure we did.

*    *    *    *    *    *

"Q. Did you receive any portion of this fifteen percent attorney's fees? A. No, sir.

"Q. In either note? A. No, sir."

No pleading was filed asserting any right of subrogation by an insurance carrier, nor do the pleadings or proof in any wise indicate the insurance coverage under which settlement was had nor if the insurance carrier had a contractual or equitable right of subrogation. The testimony is not clear and positive and without equivocation and is far from satisfactory as to the interest, if any, of the Bank in the litigation by reason of uncollected interest or attorney's fees. On the whole, it must be said this evidence coming from an officer of a banking corporation is not such that, as a matter of law, the trial court in the exercise of its prerogative to determine the facts proved, the credibility of the witnesses and the weight to be given the testimony could not have determined that the appellant failed to prove a cause of action by a preponderance of the evidence. To further compound the confused testimony before the trial judge, prior to the plea of privilege hearing appellant took a default judgment against Llano White, which was later on appellant's motion set aside. The trial court's implied finding under this evidence that the Bank did not have a cause of action or that an unnamed insurance company did not have a cause of action is binding upon this Court.

■ The appellant's second point must likewise be overruled because it is thought that under the rule stated by the Commission of Appeals in the case of O'Neal v. Texas Bank & Trust Co. of Sweetwater, 118 Tex. 133, 11 S.W.2d 791, the general jurisdiction of the court had not been invoked. In that case the Supreme Court, through the Commission of Appeals, held that filing a plea in abatement was not sufficient to invoke the jurisdiction of the court unless the court was called upon to and did rule on the matter presented by the plea, and from all the circumstances of this case it cannot be said that appellees' filing their motion to strike appellees' trial amendment and later receiving permission of the court to withdraw it was an attempt to invoke the judicial power of the court on a matter and in a manner which negatives a continuing intent to insist upon the plea of privilege. See Hall v. Castleberry, Tex.Civ.App., 283 S.W. 581, 583, and McDonald's Texas Civil Practice, Vol. 1, Sec. 4.40.

■ Nor may appellant's third point be sustained. The appellees' plea of privilege did not name the county to which the case should be transferred. The Supreme Court in Tempelmeyer v. Blackburn, 141 Tex. 600, 175 S.W.2d 222, 224, announces the rule that:

"The question put in issue by a plea of privilege is the right of the defendant filing same to have the venue changed to a designated county, and not merely the question of whether venue was properly laid in the county in which suit was filed. Should a plea merely challenge the venue without naming the county to which the case should be transferred it would present nothing for adjudication, and should an order sustaining such plea fail to direct that the case be transferred to a named county it would be lacking in finality."

The transcript shows that no objection was made to the plea of privilege because it did not name the county to which the case should be transferred but the plea of privilege states the residence of the appellees is Rockwall County, and the judgment sustaining the plea of privilege ordered the case as to appellees transferred to the District Court of Rockwall County. No testimony was either admitted or rejected because of this deficiency in the pleading. Under such circumstances it is thought that no harm has been done the appellant by reason of the failure of the plea of privi-

**162**

lege instrument to name the county to which the case should be transferred and that any error in this respect is harmless.

The judgment of the trial court is affirmed.